UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BOUELY CHARLES NADAUD,

        Petitioner,

v.

DONALD EMERSON et al.,

        Respondents.
_____/

Case No. 1:26-cv-658

Honorable Jane M. Beckering

## **OPINION**

Petitioner, a United States Immigration and Customs Enforcement (ICE) detainee currently detained at the North Lake Processing Center located in Baldwin, Lake County, Michigan, initiated this action by filing a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1.) For the following reasons, the Court will grant Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.

## **Discussion**

### I.    **Procedural History**

In Petitioner's § 2241 petition, Petitioner challenges the lawfulness of his current detention and asks the Court to, *inter alia*, accept jurisdiction over this action and issue a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering Respondents to release Petitioner. (Pet., ECF No. 1, PageID.18.)

In an Order entered on March 2, 2026, the Court directed Respondents to show cause, within three business days, why the writ of habeas corpus and other relief requested by Petitioner should not be granted. (Order, ECF No. 4.) Respondents filed their response on March 5, 2026 (ECF No. 5), and Petitioner filed his reply on March 6, 2026 (ECF No. 6).

## II.      Relevant Factual Background

"Petitioner is a citizen of France who entered the United States on September 3, 2007, at Chicago O'Hare International Airport with an authorized period valid until December 2, 2007 under the visa waiver program." (Pet., ECF No. 1, PageID.6; Anderson Decl. ¶ 4, ECF No. 5-1, PageID.38.) "On August 21, 2012, ICE issued [Petitioner] an Order of Deportation as a Visa Waiver Program Violator." (Anderson Decl. ¶ 5, ECF No. 5-1, PageID.38; Order of Deportation, ECF No. 9-1, PageID.60.) At that time, Petitioner "was issued an Order of Supervision that ordered him to check in with ICE on request." (Anderson Decl. ¶ 5, ECF No. 5-1, PageID.38–39.)

On July 30, 2025, ICE arrested Petitioner at an ICE check-in. (Pet., ECF No. 1, PageID.7.) "On July 6, 2025, ICE submitted a travel document request to the Consulate of France," and the Consulate of France denied the request on August 6, 2025, "stating that [Petitioner] is not a French national and had obtained his French passport by fraud." (Anderson Decl. ¶¶ 9–10, ECF No. 5-1, PageID.39.) ICE then "submitted a travel document request to [the] Consulate of the United Kingdom on [Petitioner]'s behalf," and "[o]n September 18, 2025, the Consulate of the United Kingdom denied the travel document request stating that [Petitioner] is not a national of the United Kingdom." (*Id.* ¶¶ 11–12.) On October 28, 2025, ICE Enforcement and Removal Operations (ERO) conducted "a Post Order Custody Review" and "determined that removal was likely in the reasonably foreseeable future and decided to maintain detention." (*Id.* ¶ 13.)

On January 9, 2026, Petitioner filed a § 2241 petition challenging his initial detention in *Nadaud v. Emerson et al.* (*Nadaud I*), No. 1:26-cv-90 (W.D. Mich.). In *Nadaud I*, the Court granted Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, ordering Respondents to release Petitioner from detention, subject to any conditions that existed under

Petitioner's prior order of supervision, because Petitioner's deportation was not "reasonably foreseeable." Op. & Jud., *Nadaud I*, (W.D. Mich. Feb. 6, 2026), (ECF Nos. 8, 9).

"On January 19, 2026, [t]he Ivory Coast issued a travel document for [Petitioner]." (Anderson Decl. ¶ 14, ECF No. 5-1, PageID.40.) On February 11, 2026, Respondents released Petitioner pursuant to this Court's order. (*Id*. ¶ 15; Pet., ECF No. 1, PageID.7.) On February 23, 2026, Respondents re-detained Petitioner "in preparation for removal from the United States to the Ivory Coast." (Anderson Decl. ¶ 16, ECF No. 5-1, PageID.40.) That day, Petitioner "claimed fear of removal to the Ivory Coast," and his fear "was recorded on a Form I-863 Notice of Referral to Immigration Judge." (*Id*. ¶ 17.) In Respondents' response, dated March 5, 2026, they indicated that "Petitioner's asylum-only hearing is scheduled before the Detroit Immigration Court on March 10, 2026." (Resp., ECF No. 5, PageID.30.)

On March 16, 2026, this Court entered an order directing the parties to each file a status report regarding what had occurred at Petitioner's March 10, 2026, hearing before the Immigration Judge (IJ), and providing information about what is scheduled to occur at the master hearing on March 25, 2026.[1] (Order, ECF No. 7, PageID.52–53.) In response, Respondents filed a status report, indicating that Petitioner appeared *pro se* at the March 10, 2026 hearing, and that the IJ granted Petitioner's request to "continue the case to allow him to hire an attorney." (Resp'ts' Status Report, ECF No. 8, PageID.54.) "Also at the hearing, Petitioner expressed an interest in filing a Form I-589, Application for Asylum and Withholding of Removal." (*Id*.) Respondents stated "[i]t is unlikely that Petitioner's proceedings will be resolved at the March 25, 2026, hearing[,]" and

---

[1] The Executive Office for Immigration Review website indicates that Petitioner is scheduled for a master hearing on March 25, 2026.

that once Petitioner files his application for asylum, "Petitioner will receive a future hearing date." (*Id.*)

Petitioner's status report noted that "the travel documents obtained to remove Petitioner to Ivory Coast have expired because they were due to expire on March 17, 2026[,] according to Respondents." (Pet'r's Status Report, ECF No. 9, PageID.57.) Petitioner states that "[a]ssuming an I-589 Application is filed within two weeks[,] [t]he [IJ] would have to provide an individual hearing date, which could take up to the middle of April." (*Id.*)

### III.    Habeas Corpus Legal Standard

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). Section 2241 of Title 28 confers the federal courts with the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. This includes challenges by non-citizens in immigration-related matters. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1367 (2025).

### IV.    Merits Discussion

Because Petitioner has a final order of deportation, which orders his removal, Petitioner's present detention is governed by 8 U.S.C. § 1231. *Zadvydas v. Davis*, 533 U.S. 678, 683 (2001). However, Petitioner contends that his detention is unlawful and violates the Due Process Clause of the Fifth Amendment. (Pet., ECF No. 1, PageID.8.) In response, Respondents argue that § 1231 "authorizes detention during the removal period and, if necessary, thereafter while the government continues efforts to effectuate removal." (Resp., ECF No. 5, PageID.31.)

Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as

the 'removal period')." 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). Here, as noted above, Petitioner's order of deportation became final on August 21, 2012. The 90-day removal period following the order expired well before Petitioner filed the present action. *See id.* § 1231(a)(1) ("The [90-day] removal period begins on . . . [t]he date the order of removal becomes administratively final.").

In *Zadvydas*, the Supreme Court held that after expiration of the 90-day removal period, the Government may continue to detain the noncitizen for a "presumptively reasonable period" of time, which the Supreme Court concluded equaled six months. *See Zadvydas*, 533 U.S. at 701. Following that six-month period, "once [a noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.*[2] "[O]nce [a noncitizen's] removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699.

In this case, Petitioner was taken into custody by ICE on July 30, 2025, and as of January 30, 2026, Petitioner was in custody for six months. Petitioner was briefly released on February 11, 2026, but was re-detained on February 23, 2026. As Respondents indicate, "[t]hat brief interruption in custody does not alter the *Zadvydas* analysis." (Resp., ECF No. 5, PageID.33.) Petitioner argues that there is a good reason to believe that no significant likelihood of removal exists. As explained below, the Court concludes that Petitioner has shown there is "good reason to believe" that "there

---

[2] The Court notes that the Supreme Court recently held that § 1231(a)(6) does not require the "Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 576 (2022). The Court, however, did not reach Arteaga-Martinez's constitutional or *Zadvydas* claims, concluding that such claims were not properly before the Court. *See id.* at 583–84.

is no significant likelihood of removal in the reasonably foreseeable future," and Respondents have failed to respond with sufficient evidence to rebut Petitioner's showing. *Zadvydas*, 533 U.S. at 701.

Specifically, the declaration that Respondents submitted in this case states that "ERO will not remove [Petitioner] to the Ivory Coast before his fear is adjudicated by an [IJ]." (Anderson Decl. ¶ 19, ECF No. 5-1, PageID.40.) Respondents indicate in their status report that "[i]t is unlikely that Petitioner's proceedings will be resolved at the March 25, 2026, hearing[,]" and that once Petitioner files his application for asylum, "Petitioner will receive a future hearing date." (Resp't's Status Report, ECF No. 8, PageID.54.) Furthermore, the declaration that Respondents submitted in response to Petitioner's first habeas petition indicates the emergency travel document from the Ivory Coast "expires on March 31, 2026." Anderson Decl. ¶ 14, *Nadaud I*, No. 1:26-cv-90 (W.D. Mich.), (ECF No. 11-1, PageID.82). There is nothing in the record before the Court to indicate that Respondents have taken any further action to effect the deportation of Petitioner after the March 10, 2026 hearing before the IJ. Moreover, it appears Respondents cannot take any further action to effect the deportation of Petitioner before his credible fear claim is adjudicated. Under these circumstances, the facts presented in the record before the Court, as set forth above, are sufficient to provide "good reason" to believe that there is no significant likelihood of removal in the reasonably foreseeable future, and Respondents have failed to respond with sufficient evidence to rebut Petitioner's showing that there is a "good reason to believe" that Petitioner will not be removed in the "reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

## V.    Other Claims and Other Forms of Relief

Because the Court will grant Petitioner's § 2241 petition as set forth herein, the Court does not address other claims and other requested relief in Petitioner's § 2241 petition.

**VI.    Proper Respondents**

Respondents argue that Petitioner has failed to name a proper Respondent because he has not named the Detroit ICE Field Office Director as a Respondent.[3] The Court concludes that the ICE Detroit Field Office Director is not the only proper Respondent for the reasons set forth in the Court's analysis of the same argument in each of the following cases: *cf. Antele Cobix v. Raycraft*, No. 1:25-cv-1669, 2025 WL 3562651, at *8–9 (W.D. Mich. Dec. 12, 2025); *Candela Bastidas v. Noem*, No. 1:25-cv-1528, 2025 WL 3562638, at *8–9 (W.D. Mich. Dec. 12, 2025); *Acuna Sanchez v. Noem*, No. 1:25-cv-1442, 2025 WL 3562577, at *9–10 (W.D. Mich. Dec. 12, 2025); *Penagos Robles v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1578, 2025 WL 3558128, at *9–10 (W.D. Mich. Dec. 12, 2025).

To ensure that this Court's orders regarding release will bind at least one Respondent with authority to act in the event that Petitioner is transferred out of the Western District of Michigan, the Court will retain the Acting Director of ICE and the Secretary for the Department of Homeland Security as Respondents. The Court will dismiss United States Immigration and Customs Enforcement as a Respondent.

### Conclusion

For the reasons discussed above, the Court will enter a Judgment granting Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (ECF No. 1.) The Court will order Respondents to release Petitioner from detention, subject to any conditions that existed under Petitioner's prior order of supervision. The Court will also order Respondents to file a status report within five days of the date of this Court's Opinion and Judgment to certify compliance with this

---

[3] The Court previously dismissed the Warden of North Lake Processing Center as a Respondent. (Order, ECF No. 4.)

Opinion and the corresponding Judgment. Further, the Court will dismiss United States Immigration and Customs Enforcement as a Respondent.


Dated:    March 25, 2026                          /s/ Jane M. Beckering
                                                  Jane M. Beckering
                                                  United States District Judge